Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Patrick J. Cashman
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                  Plaintiff,<br><br>    v.<br><br>DANIEL JAMES ANDERSON,<br><br>                  Defendant. | 4:22-CR-06001-MKD-1<br><br>United States' Sentencing Memorandum |

      Plaintiff, United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, Patrick J. Cashman, Assistant United States Attorney for the Eastern District of Washington, respectfully submits the following Sentencing Memorandum. The United States recommends the Court sentence the Defendant to a term of 37 months incarceration, followed by 3 years of supervised release. A sentence of 37 months incarceration is a just and reasonable sentence that is no greater than necessary to meet the interests of federal sentencing principles.

                            I.    <u>Background</u>

      The United States relies on the facts provided in the plea agreement and the United States Probation Office's (USPO) draft Pre-Sentence Investigation Report

United States' Sentencing Memorandum - 1

(PSIR). (ECF Nos. 102, 108). The United States reserves the ability to present additional facts and exhibits as necessary at the sentencing hearing to address any of the Court's concerns.

On March 23, 2023, Defendant plead guilty to Conspiracy to Make or Possess an Unregistered Destructive Device, in violation of 18 U.S.C. § 371. These charges stem from an investigation into a group of individuals, including the Defendant, that espoused anti-government/anti-authority ideals and prepared to take action against the government for perceived government overreach.

## II.  Base Offense Level & Enhancements

The United States concurs with the USPO's calculation of an adjusted offense level of 21. ECF No. 108, ¶49. The United States concurs the base offense level of 18 should be increased by 2 levels because the improvised explosive device is a destructive device. Furthermore, the United States concurs with the USPO's inclusion of a four-level enhancement because the Defendant possessed the improvised explosive device with the knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense. *Id.*, ¶¶39-41. The United States further concurs the Defendant's Criminal History Category is a I. *Id.*, ¶55. Accordingly, the Defendant's advisory guideline range is properly calculated at 37 to 46 months. *Id.*, 108.

## III.  Defendant's PSIR Objections

The Defendant filed an objection to the PSIR. ECF No. 109. The Defendant argues a four-level enhancement for possession of the improvised explosive device with knowledge, intent, or reason to believe it would be used in connection with another felony offense should not apply. For the below reasons, the United States submits the USPO was correct in applying the four-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(6)(B) and U.S.S.G. §1B1.3.

Pursuant to U.S.S.G. §2K2.1(b)(6)(B), a defendant's base offense level is increased by four levels when there is a preponderance of evidence showing the

United States' Sentencing Memorandum - 2

firearm was "used or possessed…in connection with another felony offense; or possessed or transferred…with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6)(B). The application notes further state U.S.S.G. § 2K2.1(b)(6)(B) applies "if the firearm or ammunition facilitated, or had the potential of facilitating, another felony offense or another offense, respectively." Generally, at sentencing the United States bears the burden of proof by a preponderance of evidence. *See United States v. Restrepo*, 946 F.2d 654, 661 (9th Cir. 1991) (en banc), *cert. denied*, 503 U.S. 961 (1992). This burden is met if the Court is convinced "by a preponderance of the evidence that the fact in question exists." *Id.* The government does not have to prove the actual commission of another felony offense for the enhancement to apply. *See United States v. Fredrickson*, 195 F.3d 438, 440 (8th Cir. 1999). Nor does the government have to prove the defendant had knowledge of the specific offense to be committed. *United States v. Dodge*, 61 F.23d 142, 146 (2d Cir. 1995). The evidence before the Court supports the conclusion that U.S.S.G. § 2K2.1(b)(6)(B) applies because the Defendant possessed the destructive device for the purpose and with the intent to commit an assault on a law enforcement and an assault with a deadly weapon. *See* RCW 9A.36.011(1)(a) and RCW 9A.36.031(1)(g).

   The Ninth Circuit previously held a district court properly applies the four-level enhancement where there is a preponderance of evidence establishing the defendant's intent. *United States v. Jimison*, 493 F.3d 1148, 1149 (9th Cir. 2007). The Ninth Circuit further concluded that the "plan to commit the felony need not be fully developed." *Id.* In *Jimison*, the only evidence of intent to commit another felony was a friend of the defendant's statement that defendant stated vague words to the effect of "going Rambo." *Id.*, 1150. Given the limited context in which this statement was made, the application of the enhancement certainly appears strained. The facts of this case significantly outweigh the minuscule evidence portrayed in *Jimison*.

United States' Sentencing Memorandum - 3

Following *Jimison*, the Ninth Circuit further elaborated that for the enhancement to apply the government had shown the defendant's firm intent and ability to use the incendiary devices. *United States v. Nostar*, 590 F.3d 624, 635-36 (9th Cir. 2009). Specifically, the Ninth Circuit noted the defendant's planned use to bomb companies or commodities, listing of various commodities and companies, commodities trading websites, shopping malls, and the defendant's "plan" to destroy a structure by dropping incendiaries from a gyrocopter or by using an ATV or other means. *Id.*, at 635. Furthermore, the defendant had two fully constructed devices and ingredients to make the devices. The evidence in *Nostar* proved, well beyond a preponderance, that the defendant had a firm intent to commit a felony and therefore the application of the enhancement was appropriate and not an abuse of discretion. *Id.*, at 636.

The facts of this case, in light of *Jimison* and *Nostar*, warrants the application of the enhancement. Here, the Defendant constructed a device that has one purpose, to hurt people. The Defendant's recorded statements to the CHS further corroborate the intent behind the Defendant's construction of the device. Moreover, the Defendant specifically stipulated in the plea agreement that he stated these devices "could be used at protests or thrown over the front line of law enforcement officers or explode behind them." ECF No. 102, pg. 7. The Defendant further stipulated in the plea agreement that he told the CHS he designed the device "to be small and portable so he could transport them in a backpack using his motorcycle." ECF No. 102, pg. 7. Coincidently, the device constructed by the Defendant is small and easily concealable. Furthermore, the Defendant did have a motorcycle that he could have used to deploy the device at a time he deemed appropriate.

Moreover, the Defendant's conduct and interactions evidence his intent to commit a future felony offense. In 2015, the Office of the Director of National Intelligence produced a document entitled Mobilization Indicators, that was later updated in 2017, 2019, and 2021. This document provides significant insight into

United States' Sentencing Memorandum - 4

common indicators of mobilization of a violent extremist to engage in acts of violence. The document defines a "motivation indicator" as "physical or virtual actions that build, solidify, or communicate violent ideological beliefs; these indicators do not necessarily suggest an impending attack or violent extremist travel." While the indicators may not mean an attack is immediately likely occur, they are factors to be considered to engage in early intervention to prevent suffering. In this case, the Defendant exhibited numerous indicators of intent to engage in violent acts, including:

- Engaging in a threatening interaction (the Defendant indicated that he geared up to confront law enforcement when they responded to an incident near his apartment);
- Professing intent to harm law enforcement if law enforcement takes action or statement of intent to harm others (the Defendant was part of a group that espoused their goal was to wait for law enforcement to overreach and then conduct an attack or unlawful violent take action);
- Posing with weapons and imagery associated with violent extremism in photographs or videos (the Defendant was previously photographed with other members of the groups in camouflage and masks, displaying weapons, and holding a flag of the group);
- Expressing acceptance of violence as a necessary means to achieve ideological goals and saying that nonviolent means are ineffective or unavailable (the Defendant specifically stated in writing to the group that he was stepping away because others were not taking the training serious enough because they were training to kill people);[1]

---

[1] *US Violent Extremist Mobilization Indicators*, Office of the Director of National Intelligence, 2021 Edition.

United States' Sentencing Memorandum - 5

The Defendant seemingly attempts to minimize the significance of the Defendant's statements by self-servingly claiming, after the fact, that he was simply bragging, that he was inept, and that his destructive device was crudely constructed. However, the facts and stipulations in this case belie that assertion and defy a commonsense approach.

The United States submits less weight should be given to the Defendant's claimed statements of bragging because of the timing in which he made them, i.e. when he was confronted by law enforcement and to his hired expert. Moreover, the fact the Defendant complied with law enforcement when contacted rather than attack them, while the appropriate and right response, bears little on the intent of the Defendant at the time that he constructed and possessed the destructive device. It is important to note, the Defendant was intentionally contacted outside of his home to limit his ability to have access to any type of dangerous weapon. Thus, his only realistic course of action at the time of his detention was to comply with the orders of the officers engaging him. Moreover, the weight of the Defendant's self-serving statements is further diminished because the Defendant could just as easily have had a change of heart or opening of his eyes to the wrongfulness of his actions at the time that he was confronted and saw that it was in his best interest to comply with law enforcement.

Furthermore, the fact the Defendant's device was crudely made or that he appeared to be less savvy in his design does not detract from his ability to use the device. At the time of this arrest, the Defendant was in possession of the destructive device, in fully constructed form. This device if detonated could have hurt individuals around the detonation. It is irrelevant if the device could hurt one person or one hundred people for the purpose of applying the enhancement.

At its root, the United States does not have to prove the actual commission of the offense, nor does the United States have to prove that the Defendant fully or near fully developed a plan, as in *Nostar*, to establish the application of the enhancement.

United States' Sentencing Memorandum - 6

Rather, the United States must show that the Defendant's possession of the firearm or destructive device facilitated or had the potential to facilitate the commission of a separate felony offense he intended to commit in the future. The facts of this case prove by a preponderance of the evidence that the Defendant constructed this destructive device for the purpose of committing a future assault on law enforcement. Accordingly, the Court should find the four-level enhancement, pursuant to U.S.S.G. § 2K2.1(b)(6)(B), applies.

Assuming *arguendo*, the Court does not apply the enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B), the United States maintains a sentence of 37 months imprisonment remains a fair and appropriate sentence when considering the 18 U.S.C. § 3553(a).[2]

## IV. 18 U.S.C. § 3553(a)

Turning to the application of the 18 U.S.C. § 3553(a) factors, a sentence of 37 months imprisonment followed by three-years supervised release is a fair sentence that is no greater than necessary to meet the interests of federal sentencing principles. When applying the 18 U.S.C. § 3553(a) factors, a sentence of 37 months and three-years supervised release is appropriate.

---

[2] The United States does not seek the application of U.S.S.G. § 3A1.4 because the evidence does not support a finding that the offense "involved, or was intended to promote, a federal crime of terrorism" as specifically defined in 18 U.S.C. § 2332b(g)(5). However, in considering the application notes for § 3A1.4, the Sentencing Commission noted an upward departure would be warranted if "(A) the offense was calculated to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct but the offense involved, or was intended to promote, an offense other than one of the offenses specifically enumerated in 18 U.S.C. § 2332b(g)(5)(B). *See* U.S.S.G. §3A1.4, app. n. 4.

United States' Sentencing Memorandum - 7

    a. Nature, Circumstances, and Seriousness of the Offense:

The nature and circumstances of this case warrant a 37-month sentence. The Defendant's acts in this case are beyond serious and egregious. The Defendant thought through, calculated, and constructed a homemade explosive device. The destructive device was made from items that were easily obtainable and accessible to the Defendant and likely not to raise concerns if bought in bulk. While the Defendant minimizes the nature of the device, whether it is a device that could inflict maximum devastation or not is irrelevant to the inquiry of the seriousness of the Defendant's actions. The Defendant had no justification, beyond his criminal intent, to construct this device. The Defendant was not simply constructing a device that he could light off in his backyard and it would make noise. Rather, the Defendant constructed a device that in his own words would throw shrapnel 20 yards. That shrapnel was glass and metal shards that he specifically inserted into the device. This destructive device had one purpose alone and that was to hurt people. This factor weighs in favor of sentencing the Defendant to a period of time that captures of the gravity of his actions. A sentence of 37 months is sufficient to adequately reflect the seriousness and egregiousness of the Defendant's actions.

    b. Characteristics and Criminal History of Defendant:

The Defendant has no criminal history aside from the current conviction. The Defendant has some higher education from Washington State University in the Tri-Cities. ECF No. 108, ¶76. At the time of this offense, the Defendant was unemployed. Following his indictment, the Defendant became employed at JMC Motors. Id., ¶77. However, that employment will end within 2 weeks of his sentencing. Id. The Defendant has not served in the military. Id., ¶ 81. Given the Defendant's financial situation, it does not appear a fine to be an appropriate sentence. Id., ¶86. While the Defendant's lack of criminal history provides mitigation, it is limited given the gravity of the Defendant's actions in this case. Accordingly, the

United States' Sentencing Memorandum - 8

United States submits this factor is neutral and a sentence of 37 months remains appropriate.

  c. Public Safety, Deterrence, and Consistency of Sentences:

  A sentence of 37 months incarceration is appropriate to protect the public and meet the interests of general and specific deterrence. A sentence of 37 months will ensure the public knows engaging in criminal acts such as these are met with significant consequences.

  Furthermore, a sentence of 37 months is consistent with other sentences for similar misconduct. *See United States v. Young*, 265 Fed.Appx. 573, *1 (9th Cir. 2008) (unpublished) (defendant's sentence of 37 months imprisonment was appropriate where defendant was convicted of possession of a destructive device); *see also United States v. Dominguez*, 104 F.3d 366, 1 (9th Cir. 1996) (unpublished) (defendant sentenced to 37 months imprisonment after having plead guilty to possession of an unregistered destructive device). Additionally, other cases have sentenced individuals to terms of confinement significantly above the United States' recommendation when warranted by other factors beyond the possession of the destructive device. *See United States v. Harris*, 96 Fed.Appx. 478, *1 (D. AZ. April 23, 2004) (defendant sentenced to 56 months imprisonment for possession of short-barreled shotgun and possession of three improvised explosive devices); *see also United States v. Bauer*, 173 F.3d 862, *1 (9th Cir. 1999) (sentencing two members of the "Viper Team" militia who were convicted of conspiracy to make and possess unregistered destructive devices and other offenses to 108 months and 71 months); *United States v. Varela*, 809 Fed.Appx. 411, 412 (9th Cir. 2020) (unpublished) (defendant sentenced to 72 months in prison for felon in possession of a firearm and possession of an unregistered destructive device but remanded to account for one level reduction for acceptance of responsibility). Accordingly, when considering the need for consistency in sentencing, the United States recommendation is in the heartland of an appropriate sentence for this misconduct.

United States' Sentencing Memorandum - 9

       d.    Rehabilitation and Programming:

A sentence of 37 months is appropriate because it will allow the Defendant to avail himself of the numerous educational and vocational programming available in Bureau of Prisons. This factor is neutral in fashioning an appropriate sentence.

Moreover, the Defendant should be sentenced to a term of 3 years supervised release. This will provide the Defendant the proper amount of supervision and opportunity to obtained employment and services, particularly mental health services, with the assistance of a USPO.

## V. Conclusion

Accordingly, the United States recommends the Court impose a sentence of 37 months imprisonment followed by 3 years of supervised release. The above sentence is a just sentence that that is no greater than necessary to meet the interests of federal sentencing.

Dated: August 2, 2023.

Vanessa R. Waldref
United States Attorney

*s/ Patrick J. Cashman*
Patrick J. Cashman
Assistant United States Attorney

United States' Sentencing Memorandum - 10

**CERTIFICATE OF SERVICE**

I hereby certify that on August 2, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Nick Mirr
nick_mirr@fd.org
Alejandra_Lozano@fd.org

                                       *s/ Patrick J. Cashman*
                                       Patrick J. Cashman
                                       Assistant United States Attorney