S. Peter Serrano
United States Attorney
Eastern District of Washington
Lisa C. Cartier Giroux
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | 4:22-CR-06001-MKD-1 |
| Plaintiff, | |
| v. | United States' Response to Defendant's Motion for Early Termination of Supervised Release (ECF No. 139) |
| DANIEL JAMES ANDERSON, | |
| Defendant. | |

Plaintiff, United States of America, by and through S. Peter Serrano, United States Attorney for the Eastern District of Washington, and Lisa C. Cartier Giroux, Assistant United States Attorney for the Eastern District of Washington, respectfully submits the following Response to Defendant's Motion for Early Termination of Supervision pursuant to 18 U.S.C. §3583(e)(1). Considering the factors in 18 U.S.C. §3533(a), this Court should deny Defendant's request.

Factual Background

In March 2021, the Federal Bureau of Investigations (FBI) identified Defendant as a member of a group known as the "Verified Bois" who espouse the "Boogaloo"

United States' Response to Motion for Early Termination of Supervision - 1

ideology and advocate violence motivated by that ideology. Based on observed conversations in an online chat platform, the group, including Defendant, were waiting for what they perceived to be an overly aggressive law enforcement action to create an opportunity to target law enforcement officers with violence.

In May 2021, Defendant and others with the group met to discuss potential attacks on United States Customs and Immigration facilities. A CS in the investigation reported that Defendant was actively involved in planning, even suggesting the use of rim-fire Tannerite as it could be detonated by a firearm. Defendant began to take a less active role in the group by June 2021 because, according to the CS, Defendant did not feel that the group was taking the training seriously enough or understand that the group was "training to kill people right now". In the same month of June, Defendant was recorded describing how he planned on making an explosive device to use as a booby trap. He further indicated that the types of devices he was assembling could be used at protests or thrown over the front line of law enforcement officers and explode behind them. Also in June, Defendant reported to the CS that he would likely test his homemade explosive devices before using them operationally. Defendant reported that he was unhappy with his family life and spoke of preferring to die in a shootout with law enforcement.

Between August and December 2021, Defendant continued his association with the Verified Bois and attended meetings and trainings while also working on perfecting the construction of IEDs. During that same time frame, he obtained firearms, to include a shotgun, which he intended to cut down the barrel (and replace the ejector) to turn it into a short-barreled firearm – a tactically superior weapon. On December 16, 2021, a federal search warrant was executed at Defendant's residence. Defendant was found in possession of a destructive device, specifically an IED built using a mason jar that also included a fragmentation level (shrapnel) commonly used to cause secondary blast injuries. He also had additional items that could be used to

create IEDs, as well as multiple firearms including a short-barreled shotgun and ammunition.

The United States requested a 37-month sentence of incarceration in this matter to be followed by 3-years of supervised release. While the undersigned was not the Assistant United States Attorney (AUSA) at the time of sentencing, the undersigned has spoken with the prior assigned AUSA. The prior AUSA advised the undersigned that the Court did decline to sentence Defendant to a longer period of incarceration but instead believed that a significantly shorter term of incarceration followed by 3 years of supervision would better provide services to support Defendant while adequately assuring the community that his actions and progress in treatment would be monitored during the time of supervision.

Defendant was placed on supervised release in April 2024. He now requests that his supervision be terminated early.

## Argument

Early termination of supervised release is governed by 18 U.S.C. § 3583(e)(1), which requires the district court to consider factors set forth in 18 U.S.C. § 3553(a). Specifically excluded, however, is 18 U.S.C. § 3553(a)(2)(A)[1], which provides for "just punishment for the offense" that "reflect[s] the seriousness of the offense." *United States v. Miqbel*, 444 F.3d 1173, 1181 (9th Cir. 2006); *see also Rita v. United States*, 551 U.S. 338, 348 (2007) (referring to this sentencing purpose as "retribution"). A "highly deferential" standard governs the review of a district court's weighing of these factors and ultimate decision to terminate or continue supervised release. *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014).

Section 3583(e)(1) specifies that, after a defendant has served at least one year of his supervised release term, a district court may terminate supervised release "'if it is satisfied that such action is warranted by the conduct of the defendant released and

---

[1] The United States notes the Supreme Court ruling in *Esteras v. United States*, 606 U.S. ----145 S.Ct. 2031 (June 2025) that courts also cannot consider § 3553(a)(2)(A) when revoking supervised release.

United States' Response to Motion for Early Termination of Supervision - 3

the interests of justice.'" *Emmett*, 749 F.3d at 819 (quoting 18 U.S.C. § 3583(e)(1)). The Ninth Circuit has found that "[t]he expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court has discretion to consider a wide range of circumstances when determining whether to grant early termination." *Id.* (quoting 18 U.S.C. § 3583(e)(1)).

      The United States objects to early termination as it believes that the nature and circumstances of the offense, defendant's particular characteristics, and the need to protect the public all weigh in favor of maintaining the term of supervised release. While Defendant may have complied with and even progressed in treatment thus far, supervised release may very well be one of the reasons why he has not returned to his prior activities. Defendant's anxiety may be currently allayed; however, he also claims that it was the pandemic combined with his anxiety that brought the onset of his highly disturbing and anti-social conduct. The pandemic came on suddenly and unexpectedly, and there is no guarantee that some other "crisis" may again push him back onto his prior path. Furthermore, considering Defendant's own expert's statement that there is "no direct relationship between [Defendant's] mental health issues and a motivation to stockpile weapons or engage in an act of terrorism", the Court should pause in resolving concerns about his history and characteristics and protecting the community on a claim that he is currently in a "better headspace". The Defendant at sentencing argued that he had a significant mental health disorder that caused him to engage in this very serious behavior but that somehow has rather quickly resolved, and he urges the Court to believe that supervision is no longer necessary.

      Defendant's various arguments to prematurely end his supervised release lack merit. He appears to be arguing that the record shows he needs no further mandatory therapy or any court supervision and is no longer a danger to the public, pointing to his steady employment for more than a year, his attendance in therapy, and his family and his motorcycle club for support. But the mere fact that things appear to be going

well over the last 12 plus months on supervised release does not affect the question whether defendant remains a danger to others when inevitable life stressors causing significant mental or emotional strain occur. The testing period from the United States' perspective, based on the facts and circumstances of this case and Defendant's own claims as to the precursors to his falling into the types of activities he was engaged in, all support a denial of his request for early termination of supervised release. For those reasons, the United States requests that the Court deny his motion.

Dated: August 22, 2025.

S. Peter Serrano
United States Attorney

*s/Lisa C. Cartier Giroux*
Lisa C. Cartier Giroux
Assistant United States Attorney

United States' Response to Motion for Early Termination of Supervision - 5

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Nick Mirr
nick_mirr@fd.org

        *s/Lisa C. Cartier Giroux*
        Lisa C. Cartier Giroux
        Assistant United States Attorney